[No. G021452. Fourth Dist., Div. Three. June 23, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
IVAN ANTONIO MANRIQUEZ, Defendant and Appellant.

COUNSEL

Leslie C. Greenbaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and Leslie B. Fleming, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SONENSHINE, J.*—Following a bench trial, the court found Ivan Antonio Manriquez aided and abetted first degree murder and attempted premeditated murder and personally used a firearm. Manriquez challenges the

*Retired Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

sufficiency of the evidence and the court's decision to admit evidence of his gang status. We affirm.[1]

## I

On Halloween night 1993, about a dozen Sullivan Street gang members were standing at a taco stand located in an area claimed by the Lil' Mafia gang. In the gang culture, such territorial intrusions often provoke a retaliatory response by the local gang. And in this case, the Lil' Mafia wasted no time reacting to Sullivan Street's challenge.

Initially, two people in a Chevrolet drove by the taco stand yelling, "Lil' Mafia" and displaying a chrome handgun. The Sullivan Street members responded by hollering out their gang's name and flashing hand signs. A few minutes later, the Chevrolet reappeared, followed by a Honda. As the cars slowly pulled up to the taco stand with their lights off, the Chevrolet's front passenger, Manriquez, hollered, "Fuck Sullivan." With that, the Honda's passenger, Gustavo Gonzalez, opened fire on the group with an assault rifle, fatally wounding Rosa Carrillo and injuring Miguel Vargas. Using a chrome .45-caliber semiautomatic pistol, Manriquez fired several shots at the group, but he did not hit anybody.[2]

Two undercover police officers happened to be in the area. They pursued the vehicles to Gonzalez's house, where they apprehended the Chevrolet's driver, Vincent Resendiz, and the Honda's driver, Guillermo Flores. However, after discarding their weapons, Manriquez and Gonzalez got away.

Manriquez fled to Mexico and remained at large until he was arrested in Texas in 1995. In an interview with police, he denied being a gang member, but he admitted he had been "kicking back" with the Lil' Mafia for two

---

[1]This is our second opinion in this case. In granting review of our first decision, the Supreme Court ordered as follows: "The cause is transferred to the Court of Appeal, Fourth Appellate District, Division Three, with directions to vacate its decision in light of the circumstances that the Court of Appeal opinion in this matter, ordered published on March 19, 1999, relies upon a decision, *People* v. *Moreno* (S075834), formerly published at 68 Cal.App.4th 1198, in which review was granted on March 9, 1999, and which is being held pending decision in *People* v. *Castenada* (S069237) and *People* v. *Robles* (S069306). In view of the circumstance that *Moreno* is now superseded and may not be cited (Cal. Rules of Court, rules 977 & 976(d)), the Court of Appeal shall make appropriate changes to its opinion in this matter." For the record, we note our original decision was filed on February 24, 1999, before the Supreme Court granted review of *Moreno*. Our original decision also predated Justice Sonenshine's retirement.

[2]At the scene, investigators found seven shell casings from Manriquez's gun. The dispersion pattern of the casings indicated Manriquez's gun was not fired from a stationary position. Nonetheless, four of his shots struck the exterior wall of a restaurant located directly behind the taco stand, and three of his shots hit the window of this restaurant.

years at the time of the shooting.[3] Manriquez also knew of and was involved in the rivalry with Sullivan Street. Indeed, on the afternoon of the shooting, the Sullivan Streeters pelted him and Resendiz with bottles when they drove by the taco stand. Manriquez and his pals congregated at Gonzalez's house, where they decided to confront their rivals, or as Manriquez put it, "To shit on em." When they approached the taco stand, Gonzalez started firing from the Honda. Then Resendiz told Manriquez to start shooting the Sullivan Streeters. Manriquez pulled out the handgun and emptied a full clip of ammunition.

Corporal Richard Reese, a gang expert and the lead investigator on the case, testified the incident fit the classic pattern of a gang-related drive-by shooting. He believed Manriquez was a member of the Lil' Mafia because gangs do not allow nonmembers to come along on drive-by shootings. That is because participants in a drive-by shooting must be able to trust each other in terms of backing each other up and not talking to the police. As Reese explained, it would defy logic and experience to believe someone would fire shots during a gang-related drive-by shooting without knowing the underlying gang implications of the shooting.

In closing, Manriquez argued he was in the wrong place at the wrong time. He claimed he did not know his friends were planning a drive-by shooting, and he simply fired the gun at Resendiz's command. Alternatively, Manriquez argued imperfect self-defense, based on his being tired, his drinking and his erroneous belief someone was firing at him. Manriquez admitted the facts were not very favorable to him, and in the end the court rejected Manriquez's arguments out of hand. The court found the occupants of both cars knew they were going to commit a drive-by shooting, and by firing his gun Manriquez aided and abetted Gonzalez in committing murder and attempted murder.

## II

 Manriquez argues there is insufficient evidence to support the court's findings. We disagree.

 "Our role in considering an insufficiency of the evidence claim is quite limited. We do not reassess the credibility of witnesses . . . , and we review the record in the light most favorable to the judgment, . . . drawing all inferences from the evidence which supports the [fact finder's] verdict . . . . By this process we endeavor to determine whether ' "*any* rational trier of fact" ' could have been persuaded of the defendant's guilt." (*People*

---

[3]Resendiz, Flores and Gonzalez were documented members of the Lil' Mafia.

v. *Olguin* (1994) 31 Cal.App.4th 1355, 1382 [37 Cal.Rptr.2d 596], citations omitted, original italics.)

To be liable as an aider and abettor, the defendant "must 'act with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' . . . The jury must find 'the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense[.]' " (*People* v. *Mendoza* (1998) 18 Cal.4th 1114, 1123 [77 Cal.Rptr.2d 428, 959 P.2d 735], citations and italics omitted.)

Manriquez argues there is insufficient evidence he knew Gonzalez intended to commit a drive-by shooting. He acknowledges Reese's opinion to the contrary but insists his opinion was based on faulty reasoning. Principally, he maintains evidence he "participated in a single offense involving gang members, *without more*, is a thin reed to support [Reese's] opinion that he was, even nominally, a gang member with knowledge of the others' intent to do a drive-by shooting." (Italics added.)

But there *was* more, as evidenced by the events leading up to, and the circumstances surrounding, the shooting. Regardless of whether Manriquez was a full-blown member of the Lil' Mafia, he admitted "kicking back" with the gang, and clearly he was friends with its members. In addition, he knew of the hostility between the Lil' Mafia and Sullivan Street. In fact, on the day of the shooting, Sullivan Street heightened tensions by hanging out in Lil' Mafia's territory and throwing bottles at Manriquez and Resendiz when they drove by. The two retreated to Gonzalez's house, where, along with Gonzalez and Flores, they agreed to retaliate against Sullivan Street. Although there was no evidence of a formal plan to commit a shooting, Manriquez admitted they were going to "shit on" Sullivan Street, and he knew there was a handgun in Resendiz's car. Manriquez's intent became more clear when, upon returning to the taco stand with Resendiz, he hollered, "Fuck Sullivan." Then, as soon as Gonzalez opened fire with his assault rifle, Manriquez joined the foray by firing every bullet in his clip.

Rather than supporting Manriquez's hypothesis he was an innocent dupe unaware of his friends' deadly intentions, this evidence, considered in its totality, strongly supports the court's conclusion Manriquez knew there was going to be a murderous shooting. We therefore reject Manriquez's challenge to the sufficiency of the evidence.

### III

Alternatively, Manriquez contends the court abused its discretion and denied him due process by admitting Reese's opinions about his gang

status. Manriquez has no quarrel with Reese's qualifications to testify regarding the customary practices of criminal street gangs. However, he claims it was improper for Reese to conclude he was a gang member simply because he participated in a gang-related offense.

■ " '[A] trial court has wide discretion to admit or exclude expert testimony. . . . An appellate court may not interfere with the exercise of that discretion unless it is clearly abused.' " (*People* v. *Valdez* (1997) 58 Cal.App.4th 494, 506 [68 Cal.Rptr.2d 135], citations omitted.) No such abuse appears here.

■ Reese did not conclude Manriquez was a gang member simply because he participated in any old gang-related offense. Rather, he reached this conclusion after carefully considering Manriquez's involvement in *this* particular shooting. Because gangs are not known to commit drive-by shootings with nonmembers, Manriquez's participation in the charged offenses was highly probative in determining his gang status.

Still, Manriquez complains Reese's opinion was "illogical" absent other evidence showing he was a gang member, such as gang tattoos or prior gang-related offenses. Manriquez's argument overlooks the commonsense notion a person's participation in an activity can be sufficiently revealing to support an inference of association with a particular group. While Manriquez's membership in the Lil' Mafia may not have been positively confirmed by virtue of his partaking in the drive-by shooting, the circumstances of the shooting clearly were such as to permit Reese to offer his opinion on the matter to the court. There was no abuse of discretion or denial of due process.

The judgment is affirmed.

Sills, P. J., and Scoville, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied October 20, 1999.

---

*Retired Presiding Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.