Filed 7/31/13  P. v. Lua CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN LUA,<br><br>    Defendant and Appellant. | B242445<br><br>(Los Angeles County<br>Super. Ct. No. YA082208) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven R. Van Sicklen, Judge.  Affirmed as modified.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Paul M. Roadarmel, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

A jury convicted defendant, Juan Lua, of two counts (counts 1 and 2) of attempted murder.  (Pen. Code,[1] §§ 664, 187, subd. (a).)  The jury further found defendant personally and intentionally discharged a firearm and proximately caused great bodily injury.  (§ 12022.53, subds. (b), (c) & (d).)  The jury found a gang enhancement allegation not true.  (§ 186.22, subd. (b)(4).)  The prosecution dismissed count 2 following a new trial grant.  Defendant pleaded no contest to a new count 3, assault with a firearm.  (§ 245, subd. (a)(2).)  Defendant was sentenced to 34 years to life in state prison.

# II.  THE EVIDENCE

On March 14, 2010, defendant walked into a pizza restaurant in Inglewood and shot two employees—Pedro Lujano and Saeid Sedaghat.  Mr. Lujano had grown up with defendant in the same neighborhood.  They had been members of the same gang.  Mr. Lujano repeatedly and consistently identified defendant as the gunman.

There was no evidence of a robbery.  There was some evidence defendant shot Mr. Lujano in retaliation for gang-related events.  There was also evidence defendant had a personal vendetta against Mr. Lujano.  The second victim, Mr. Sedaghat, was simply present and had nothing to do with the relationship between Mr. Lujano and defendant.

Detective Kerry Tripp testified concerning defendant's gang.  In Detective Tripp's opinion, the attempted murders were committed for the benefit of a criminal street gang.  As noted above, however, the jury found that allegation not true.

---

[1]    Further statutory references are to the Penal Code except where otherwise noted.

## III. DISCUSSION

### A. Detective Michael Han's Testimony

An investigating officer, Detective Han, was called as a witness for the defense. Detective Han executed a search warrant at defendant's residence. No evidence was found connecting defendant with the attempted murders of Mr. Lujano and Mr. Sedaghat. The search warrant was executed on September 15, 2010, the day defendant was arrested. This was six months after the attempted murders occurred. The inference the defense sought to convey was that defendant was innocent. In other words, if defendant had committed the attempted murders, there would have been evidence linking him to the crimes in his home.

On cross-examination of Detective Han, the prosecutor sought to counter the inference that defendant was innocent. Over defense counsel's objection, the prosecutor asked: "Let's assume that there's an intentional deliberate attempted murder [with a firearm] that occurs in March of 2010 . . . . And let's say six months after that there's a search warrant executed at the home of the . . . suspect. [¶] Hypothetically speaking, based on your background, training and experience as a ten-year detective, 20-year police officer, would you believe it is unusual that during the execution of that search warrant no firearm was found . . . and that no clothing was found that was consistent with clothing observed in March of 2010?" Detective Han responded, "It will be common that we wouldn't find any such evidence at that house." Detective Han explained: "[In my] opinion, based on my training and experience and 20 years on the job, no suspect who had just commit[ted] a . . . crime, almost killing a person, would . . . keep those items such as guns, the clothing that he was wearing."

Defendant argues it was prejudicial error depriving him of a fair trial to admit the testimony elicited by the prosecutor on cross-examination of Detective Han. Defendant contends the evidence was irrelevant and was not properly admitted as opinion testimony. We review issues concerning relevancy and opinion testimony for an abuse of discretion.

3

(*People v. Lee* (2011) 51 Cal.4th 620, 643 [relevancy]; *People v. San Nicolas* (2004) 34 Cal.4th 614, 633 [opinion testimony].) We find no error or abuse of discretion.

First, the trial court could reasonably rule the challenged evidence was relevant. It tended in reason to prove a disputed fact—whether defendant was the perpetrator—that was of consequence to the determination of the action. (Evid. Code, § 210; see *People v. Cowan* (2010) 50 Cal.4th 401, 482-483; *People v. Robinson* (2005) 37 Cal.4th 592, 630 [challenged evidence relevant to prove prosecution theory of homicide].) Second, Detective Han was an experienced law enforcement officer. His testimony rested on that experience. It therefore qualified as admissible opinion testimony. (See, e.g., *People v. Fuiava* (2012) 53 Cal.4th 622, 671-673 [sergeant's testimony concerning gunshot sounds stemmed from special knowledge and experience in training deputies at the academy]; *People v. Leahy* (1994) 8 Cal.4th 587, 620-621 [police officer may testify based on experience that jerky eyeball movement is a symptom of intoxication]; *People v. Jenkins* (1975) 13 Cal.3d 749, 755 [experienced police officer may testify that tools found in defendant's vehicle were of a type commonly used in burglaries]; *People v. Williams* (1992) 3 Cal.App.4th 1326, 1332-1333 [police officer's testimony based on administration of horizontal gaze nystagmus test was based on special skill, training, knowledge and experience not merely lay opinion].) Further Detective Han's opinion was sufficiently beyond the common experience of jurors so as to assist them in assessing the evidence. (Evid. Code, § 801; see *People v. Fuiava, supra,* 53 Cal.4th at pp. 672-673 [deputy testified "people under stress often are unable accurately to determine from where a shot came, and that if a person were to say that he or she heard a shot from the left this would not necessarily mean the shot did, in fact, come from the left"]; *People v. Robinson, supra,* 37 Cal.4th at p. 631 [position of bodies based on medical evidence].) Detective Han's testimony assisted the jury to evaluate the significance of the fact that no evidence connecting defendant with the present crime was found during the search.

This was not, as defendant asserts, inadmissible as a matter of law profile evidence. Detective Han did not discuss defendant's behavior as compared to a list of characteristics that were typical of persons who engaged in attempted murder. (*People v.*

4

*Prince* (2007) 40 Cal.4th 1179, 1226; compare, e.g., *People v. Robbie* (2001) 92 Cal.App.4th 1075, 1084; *People v. Castaneda* (1997) 55 Cal.App.4th 1067, 1071.) Detective Han simply stated that no incriminating evidence was discovered. In his considerable experience, criminals often disposed of such evidence.

Nor was it necessary, as defendant claims, to qualify Detective Han as an expert *sociologist* in order to introduce the challenged testimony. Qualified law enforcement officers are permitted to testify about criminals' practices. (*People v. Prince, supra,* 40 Cal.4th at pp. 1223-1225; *People v. Manriquez* (1999) 72 Cal.App.4th 1486, 1491-1492; *People v. Clay* (1964) 227 Cal.App.2d 87, 92-93.) In *People v. Manriquez, supra,* 72 Cal.App.4th at pages 1491-1492, for example, an investigator testified the defendant was a gang member. The defendant had participated in a drive-by shooting. The investigator explained that criminal street gangs do not ordinarily commit drive-by shootings with non-gang members in the vehicle. The Court of Appeal for the Fourth Appellate District found no abuse of discretion in the trial court's order admitting the testimony. (*Id.* at p. 1492; see 1 Witkin, Cal. Evidence (5th ed. 2012) Opinion Evidence, § 64, p. 702.)

Similarly, in *People v. Clay, supra,* 227 Cal.App.2d at pages 92-93, a police department inspector testified about "till tapping," a theft method used by criminals. In response to a hypothetical question predicated on the facts of the case, the inspector testified, "'That is the usual procedure of till tappers.'" (*Ibid.*) The law enforcement officer further testified, "[H]e could recall of no particular case in his experience where the money was *actually seen being taken*" from the till. (*Id.* at p. 93, orig. italics.) The Court of Appeal for the First Appellate District concluded there was no abuse of discretion in admitting the testimony. (*Id.* at pp. 96-98; see *People v. Prince*, *supra*, 40 Cal.4th at p. 1224.)

Here, a search of defendant's residence failed to locate any evidence connecting him with the attempted murders. Defense counsel elicited testimony to that effect in support of an inference defendant was not the perpetrator. On cross-examination, Detective Han testified it would not be unusual for a gun and clothing used in a crime to be disposed of after six months. For all of the reasons discussed above, the trial court did

5

not abuse its discretion when it admitted the challenged testimony. We turn to defendant's fair trial claim. Defendant did not assert any violation of his constitutional rights in the trial court. Even if the constitutional objection had been raised, it is without merit for the same reasons that his state law claim is rejected. (*People v. Fuiava, supra,* 53 Cal.4th at p. 670; *People v. Prince, supra,* 40 Cal.4th at p. 1229.)

## B. Restitution

We asked the parties to brief the question whether the trial court erred when it imposed "a mandatory $240 victim restitution fine" and a $200 "parole violation fine." On March 14, 2010, when defendant committed the present offense, the minimum section 1202.4, subdivision (b) restitution fine was $200. (See *People v. Souza* (2012) 54 Cal.4th 90, 143 [restitution fines constitute punishment for purposes of ex post facto clause] *People v. Callejas* (2000) 85 Cal.App.4th 667, 670 & fn. 9 [same].) The trial court imposed a $240 restitution fine under section 1202.4, subdivision (b). The section 1202.45 parole revocation restitution fine must be in the same amount as the section 1202.4, subdivision (b) restitution fine. (§ 1202.45; *People v. Soria* (2010) 48 Cal.4th 58, 62; *People v. Hunt* (2013) 213 Cal.App.4th 13, 18; *People v. Rodriguez* (2000) 80 Cal.App.4th 372, 376.) Therefore, the oral pronouncement of judgment must be modified to impose a $240 parole revocation restitution fine under section 1202.45. The abstract of judgment must be amended to reflect a $240 restitution fine (§ 1202.4, subd. (b)) and a $240 parole revocation restitution fine (§ 1202.45).

## IV.  DISPOSITION

The judgment is modified to impose a $240 parole revocation restitution fine under Penal Code section 1202.45.  The judgment is affirmed in all other respects.  Upon remittitur issuance, the abstract of judgment must be amended to reflect a $240 restitution fine and a $240 parole revocation restitution fine (Pen. Code, §§ 1202.4, subd. (b), 1202.45).  The superior court clerk must deliver a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P.J.

We concur:

MOSK, J.

KRIEGLER, J.

7