Filed 9/17/15 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>ROBERT TERRY VASQUEZ,<br><br>   Defendant and Appellant. | 2d Crim. No. B255131<br>(Super. Ct. No. 2013027926)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is so ordered that the opinion filed herein on August 31, 2015, be modified as follows:

1.  On page 2, the last sentence of the first paragraph is changed to read:  "After escrow, she notified creditors of her changed address."

2.  On page 2, the last sentence of the third full paragraph is changed to read:  "She locked all the doors and the two windows that could be locked prior to leaving for a friend's house for the night."

3.  On page 6, line 6 of the second paragraph, the word "apartment" is changed to "house," so the sentence reads:  "Aside from her temporarily sleeping at a girlfriend's house, Banks was generally in or around the premises of her new home."

There is no change in the judgment.

Appellant's petition for rehearing is denied.

**CERTIFIED FOR PARTIAL PUBLICATION[1]**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT TERRY VASQUEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B255131<br>(Super. Ct. No. 2013027926)<br>(Ventura County) |

The new owner of a house prepares to move in. She transfers utilities to her name, installs locks, leaves personal items in the house, paints an interior wall of the garage, and comes and goes during daytime hours narrowly missing defendant's two intrusions. Here we hold these facts are sufficient to establish her house is an inhabited dwelling for purposes of first degree burglary.

Robert Terry Vasquez appeals a judgment following conviction of residential burglary and misdemeanor trespass, with a finding that he served a prior prison term. (Pen. Code, §§ 459, 602.5, subd. (a), 667.5, subd. (b).)[2] We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

On August 28, 2013, Charlotte Banks closed escrow and received the keys to her newly purchased home located at 931 Albany Avenue in Ventura. Banks intended

---

[1] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

[2] All further statutory references are to the Penal Code unless stated otherwise.

the home to be her primary residence and had introduced herself to an Albany Avenue neighbor. Prior to the close of escrow, Banks arranged for the transfer of the home's utilities to her account. She notified creditors of her changed address.

Banks had ambitious plans to improve the home, including removing the floor coverings, replacing the windows and doors, and painting the interior walls. Following close of escrow, she went to the home to ensure that the utilities were functional.

On August 29, 2013, a contractor arrived at the home to remove the acoustic ceiling. Banks arrived later in the day and brought painting supplies and a few tools so that she and several friends could begin to paint the interior of the home that evening. Banks also brought several patio chairs and a canvas bag that contained a change of clothing and her "hair extensions." She did not intend to sleep in the home, however, until it was secure, i.e., until the doors and windows were replaced.

That evening, Banks and her friends painted the interior of the garage. One friend brought a case of bottled water, plastic cups, and cookies for the work party. The friends finished painting for the evening at approximately 8:00 p.m. Banks left the canvas bag, painting supplies, tools, and snacks inside the home. She locked all the doors and windows prior to leaving for a friend's apartment for the night.

At approximately 8:10 a.m. the following morning, neighbors Jonathan and Maria De La Rosa saw a white Suburban vehicle park near Banks's home. They saw Vasquez and several female passengers inside the vehicle. The De La Rosas recognized Vasquez and one of the passengers as former tenants of the home that Banks had purchased. Jonathan De La Rosa heard a female passenger call the name "Robert" three times.

Vasquez walked to the front door of the home and then looked into the garage through a window. He returned to his vehicle, spoke to a passenger, and then made a telephone call as he walked along the sidewalk. Following the telephone call, Vasquez walked through the side gate of the home. Five minutes later, three female

2

passengers left the Suburban vehicle, walked to the front door, and entered the home. Vasquez later returned to the vehicle, removed a small bundle of clothing, and again walked through the side gate. A second man arrived and also went inside the home.

Maria De La Rosa became concerned because she knew that Vasquez was no longer a tenant there and that the property had been sold. She telephoned for police assistance. At trial, the prosecutor played the "911" recording of her conversation with the police dispatcher.

After De La Rosa completed the police call, she saw the three women leave the home. One woman carried a box and walked down the street. Another woman had wet hair. De La Rosa left for her employment prior to the arrival of police officers.

At approximately 9:00 a.m., Banks arrived at her home and was met by Ventura police officers. The contents of her canvas bag had been emptied onto the floor and her hair extensions were missing. The bottled water, cookies, paint jars, cordless screwdriver, and a GPS were missing. Banks then secured the windows and doors to her home and went to a home improvement store to purchase door locks, among other things.

Banks returned to her home early that afternoon. She found that the contents of her canvas bag again had been emptied onto the floor. She also found a wristwatch on the shower rail in the bathroom.

Earlier that day, a termite-damage repairman visited Banks's property to repair structural termite damage. He noticed that a stack of bricks was beneath a bathroom window that was partially open.

Police officers arrested Vasquez and later interviewed him. During a recorded interview, Vasquez stated that he was a former tenant of the home. Vasquez knew that the home had been sold, but he decided "to check it" because he was considering renting the property again. Vasquez stated that the three women wanted to shower and that they were friends of his brother. Vasquez admitted taking the food from the home, but explained that he believed the food belonged to him as a former tenant. The prosecutor played the recording of Vasquez's interview at trial.

3

The St. Vincent de Paul Society was the previous owner of Banks's home. The Society evicted the former tenants on June 19, 2013, and later sold the property to Banks.

At trial, Vasquez testified that he visited the Albany Avenue property that day because he believed his former roommate still lived there. He stated that he stayed in the garage and smoked marijuana while the three women were inside. Vasquez stated that he thought the food inside the home belonged to his roommate and he denied taking it. Vasquez also stated that he had lived in the home for two years and was unaware that it had been sold recently. He admitted stacking the bricks outside the bathroom window to gain access to the home a second time to look for a wristwatch left by one of his companions.

The jury convicted Vasquez of residential burglary (count 1) and misdemeanor trespass (count 2). In a separate proceeding, Vasquez admitted and the trial court found that he served three prior prison terms within the meaning of section 667.5, subdivision (b). The court sentenced him to a prison term of three years, consisting of a low term of two years for count 1 plus one year to be served consecutively for one prior prison term served. [[The court imposed a $1,721 probation investigation fee, a $300 restitution fine, a $300 parole revocation restitution fine (stayed), and a $404.23 criminal justice administration fee; ordered $325.50 as victim restitution; and awarded Vasquez 316 days of presentence custody credit. (§§ 1203.1b, 1202.4, subd. (b), 1202.45; Gov. Code, § 29550.2, subd. (a); § 1202.4, subd. (f).) The court struck the remaining two prior prison term findings and did not impose any confinement for count 2, misdemeanor trespass.]]

Vasquez appeals and contends that: 1) insufficient evidence supports the burglary conviction; and, the trial court erred by: 2) instructing with People's Special Instruction No. 2, regarding temporary absence from a residence; 3) instructing with CALCRIM No. 1702, relating principles of aiding and abetting and the elements of burglary; 4) refusing an instruction regarding mistake of fact[[; 5) ruling that his prior

4

convictions were admissible for impeachment purposes; and 6) imposing a probation investigation fee and a criminal justice administration fee without finding that he had an ability to pay those fees]].

*DISCUSSION*

*I.*

Vasquez argues that insufficient evidence supports the burglary conviction because there is not sufficient evidence that Banks's home was "inhabited" pursuant to the burglary statutes. He asserts that the home was between occupants because Banks had not yet moved her furniture into the home, was not sleeping or cooking there, and wanted the home to be secure before she moved her possessions inside. Vasquez claims that his conviction denies him due process of law pursuant to the United States and California Constitutions.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (2015) 60 Cal.4th 966, 988; *People v. Jackson* (2014) 58 Cal.4th 724, 749.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*Johnson*, at p. 988; *People v. Watkins* (2012) 55 Cal.4th 999, 1020.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].) We must accept logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*People v. Streeter* (2012) 54 Cal.4th 205, 241, disapproved on other grounds as stated in *People v. Harris* (2013) 57 Cal.4th 804, 834.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.)

5

Section 460, subdivision (a) provides: "Every burglary of an inhabited dwelling house . . . is burglary of the first degree." Section 459 provides: "'[I]nhabited' means currently being used for dwelling purposes, whether occupied or not." The use of a house as sleeping quarters is not determinative; it is but one circumstance in deciding whether a house is inhabited. (*People v. Hughes* (2002) 27 Cal.4th 287, 354; *id.* at p. 355 [the "inhabited-uninhabited dichotomy" turns on the character of the use of a building, not the presence or absence of a person].)

Sufficient evidence and all reasonable inferences therefrom support the burglary conviction. Banks testified that she inhabits the property. She introduced herself to a neighbor, transferred the utilities to her personal accounts, notified creditors of her new address, and began painting and renovating the home. She added window locks and left tools and personal belongings, including several chairs and snacks, inside the home. Aside from her temporarily sleeping at a girlfriend's apartment, Banks was generally in or around the premises of her new home. (*People v. Hansen* (1994) 9 Cal.4th 300, 310, overruled on other grounds by *People v. Chun* (2009) 45 Cal.4th 1172, 1199 [an inhabited dwelling is one in which persons reside and where occupants are generally in or around the premises]; *People v. Hernandez* (1992) 9 Cal.App.4th 438, 440-442 [first degree burglary conviction upheld where victims had just moved into the apartment and had not yet unpacked belongings or slept in apartment].) This increased the danger of personal injury and the risk of "'a violent confrontation during a burglary.'" (*People v. Hughes*, *supra*, 27 Cal.4th 287, 355.) Indeed, Banks narrowly missed each of Vasquez's intrusions on August 30, 2013. Even if the evidence supports a contrary finding, we do not substitute our views for those of the trier of fact. (*People v. Albillar*, *supra*, 51 Cal.4th 47, 60.)

## II.

Vasquez argues that the trial court erred by instructing with this special instruction: "A structure is an inhabited house for the purposes of first degree residential burglary if the resident has previously demonstrated an intent to use the structure as a

6

residence. [¶] The structure is still 'inhabited' if the resident is temporarily absent from the structure at the time of the burglary so long as the resident intended to return to the structure and use it as a residence."

Among other criticisms, Vasquez contends the instruction relies upon "only the intent of a resident to reside in a house in the future." He also asserts that the phrase "still 'inhabited'" implies that Banks was already a resident. Vasquez contends the error denied him a jury trial and due process of law pursuant to the United States and California Constitutions.

The instruction was proper and applied to the prosecutor's theory of the case: Banks "demonstrated" her intent to establish residency by activating the utilities, notifying her creditors, introducing herself to a neighbor prior to the close of escrow, embarking upon renovations to the property, and bringing personal property to the home. The instruction does not use the language, "if the resident has previously *stated* an intent to use the structure as a residence." The issue of habitation was a factual question for the jury to resolve from the evidence, and the instruction plainly concerns the temporary absence of one who has already established residency. We presume jurors understand and follow the court's instructions. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 447.)

In any event, Vasquez argued during summation that Banks had not established habitation in the first place. Under those factual circumstances, the instruction became irrelevant and generally, only technical error. (*People v. Cross* (2008) 45 Cal.4th 58, 67 ["giving an irrelevant or inapplicable instruction is generally "'only a technical error which does not constitute ground for reversal'"'"].)

*III.*

Vasquez contends that CALCRIM No. 1702, concerning aiding and abetting a burglary, was confusing and permitted a finding of his aiding and abetting without finding that the women had an intent to steal when they entered Banks's home. CALCRIM No. 1702 provides: "To be guilty of burglary as an aider and abettor, the

7

defendant must have known of the perpetrator's unlawful purpose and must have formed the intent to aid, facilitate, promote, instigate, or encourage commission of the burglary before the perpetrator finally left the structure." Vasquez asserts that the erroneous instruction is not harmless beyond a reasonable doubt and lessened the prosecutor's burden of proof.

There is no error because the instructions taken as a whole completely and properly instructed regarding burglary and aiding and abetting a burglary. The trial court instructed regarding the elements of burglary and the general principles of aiding and abetting. (CALCRIM Nos. 1700 ["Burglary"], 1701 ["Burglary: Degrees"], 400 ["Aiding and Abetting: General Principles"], 401 ["Aiding and Abetting: Intended Crimes"].) The burglary instruction required the jury to find that a burglary requires an intent to commit theft upon entry into a building. (CALCRIM No. 1700.) CALCRIM No. 1702, the instruction Vasquez challenges, refers to "commission of the burglary," which obviously relates to "the perpetrator's unlawful purpose." The instructions considered together required the jury to find that Vasquez's companions intended to commit a theft prior to entering Banks's house. We presume that jurors understand, correlate, and follow the court's instructions. (*People v. Pearson* (2013) 56 Cal.4th 393, 414; *People v. McKinnon* (2011) 52 Cal.4th 610, 670 ["We 'credit jurors with intelligence and common sense'"]; *People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

*IV.*

Vasquez contends that the trial court erred by refusing to instruct with CALCRIM No. 3406 regarding mistake of fact to negate the element of theft as an element of burglary. He asserts that he was thereby denied a fair trial and due process of law pursuant to the United States and California Constitutions.

For several reasons, we reject this argument.

First, Vasquez stated during his police interview that he did not think any items were inside the home when he entered. He also testified at trial that he smoked marijuana in the garage while his companions were inside the home and he was not

8

aware that they took any of Banks's possessions.  Thus, any mistake of fact regarding ownership of the items taken is irrelevant.  Moreover, Vasquez had been evicted from the home several months prior to Banks's close of escrow and could not reasonably defend a burglary charge, including theft of shower water or Banks's hair extensions, with the mistake of fact doctrine.

Second, any error in rejecting the instruction is subject to the harmless error rule of *People v. Watson* (1956) 46 Cal.2d 818, 836.  (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1431, disapproved on other grounds by *People v. Anderson* (2011) 51 Cal.4th 989, 992.)  In convicting Vasquez of burglary, the jury necessarily found that he had formed an intent to steal when he entered Banks's home.  It is not reasonably probable that he would have obtained a more favorable result had the trial court instructed regarding mistake of fact.

[[*V.*

Vasquez argues that the trial court abused its discretion by permitting impeachment with his four prior felony convictions.  He contends that the convictions have minimal probative value and were unduly prejudicial in view of their remoteness and limited relevance to credibility.  Vasquez asserts that the error is not harmless beyond a reasonable doubt because his defense turned on his credibility as a witness.

During Vasquez's testimony, his attorney questioned him briefly regarding the four prior felony convictions.  Vasquez responded that he had pleaded guilty and gave explanations for the prior crimes that minimized his behavior.  These prior felony convictions included:  1) a 1997 conviction for commercial burglary, a crime that Vasquez described as "a beer run"; 2) a 2002 conviction for infliction of corporal injury on a spouse ("We've been together for 15 years"); 3) a 2009 conviction for possession of a firearm; and 4) a 2011 conviction for transportation of narcotics.

The trial court possesses broad discretion to allow or exclude impeachment evidence pursuant to Evidence Code section 352.  (*People v. Clark* (2011) 52 Cal.4th 856, 931.)  In exercising its discretion, the court should consider, among other factors,

9

whether the prior conviction reflects on the witness's honesty or veracity; whether the conviction is near or remote in time; whether it is for the same or similar conduct as the charged offense; and what effect its admission would have on the defendant's decision to testify. (*Ibid.*) A reviewing court ordinarily will uphold the court's exercise of its broad discretion to admit or exclude impeachment evidence. (*Id.* at p. 932.)

The trial court did not abuse its discretion in admitting evidence of the four prior convictions. Preliminarily, the four prior convictions involved moral turpitude or dishonesty. (*People v. Clark*, *supra*, 52 Cal.4th 856, 931.) Moreover, although a conviction for transportation of narcotics may involve possession rather than sale, the probation report reflects that a parole search of Vasquez's vehicle revealed 12 baggies of methamphetamine hidden between the seats.

In addition, a "remote" conviction may have less probative value, but it is not necessarily inadmissible for impeachment purposes. (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925.) "Even a fairly remote prior conviction is admissible if the defendant has not led a legally blameless life since the time of the remote prior." (*Id.* at pp. 925-926.) Here Vasquez has served three prison terms and one county jail confinement from 1997 through 2011. Any remoteness factor does not detract from the admissibility of the prior convictions given Vasquez's serial pattern of criminality.

Impeachment by the prior convictions also had no adverse impact on Vasquez's decision to testify because he did testify. Indeed, questioning by his attorney demonstrated Vasquez's candor and honesty through his admissions that he suffered the prior convictions.

In sum, the trial court did not abuse its discretion regarding the prior felony convictions and impeachment.

## VI.

Vasquez argues that the trial court erred by imposing a $1,721 probation investigation fee and a $404.23 criminal justice administration fee because there is insufficient evidence that he had an ability to pay those fees or that he received notice of

10

his right to a hearing regarding his ability to pay.  (§§ 1203.1b; Gov. Code, § 29550.2, subd. (a).)

Our Supreme Court recently determined that a defendant's failure to object to the imposition of a probation investigation fee or a criminal justice administration fee forfeits the argument on appeal regarding his ability to pay the fees.  (*People v. Aguilar* (2015) 60 Cal.4th 862, 866; *People v. Trujillo* (2015) 60 Cal.4th 850, 858-859.)  "Represented by counsel, defendant made no objection at sentencing to the amount of probation-related fees imposed or the process, or lack thereof, by which she was ordered to pay them; nor does the record contain any indication defendant later raised the question of her ability to pay in the probation department or the sentencing court.  No reason appears why defendant should be permitted to appeal the sentencing court's imposition of such fees after having thus tacitly assented below."  (*Trujillo*, at pp. 858-859.)]]

The judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.


11

David Hirsch, Judge

Superior Court County of Ventura

_____

Sarah G. LoPresti, under appointment by the Court of Appeal; Suzan E. Hier, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.