Filed 11/30/20  P. v. Porpora CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058133 |
| v. | (Super. Ct. No. 18CF1949) |
| MICHAEL JOSEPH PORPORA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Julian W. Bailey, Judge.  Affirmed.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Michael Joseph Porpora was charged with felony receipt of stolen property under Penal Code section 496, subdivision (a), after a firearm, storage bag, and laptop reported as stolen were found in his car.[1] Following trial, he was convicted of a misdemeanor violation, as the jury found the stolen property he possessed was worth less than $950. On appeal, defendant maintains his conviction should be reversed for two reasons. Primarily, he argues there was insufficient evidence to establish that he knew the firearm was stolen. He also asserts there was insufficient evidence that the storage bag and laptop found in his car were the items that were reported stolen.

We disagree and affirm the judgment. As to the first argument, there is sufficient evidence that defendant knew the firearm was stolen. When asked by the police, defendant gave contradicting stories about the gun's owner. Initially, he claimed the gun belonged to another person and that he was thinking about purchasing it. After further questioning by the police, he confessed to purchasing the gun two months prior for $700. He admitted to lying because "if anything comes back on [the firearm after a record's check], it's not me. That's why I did that." Defendant's contradictory statements, along with his failure to register the gun after possessing it for four months, are sufficient evidence that he knew the gun was stolen. Because the conviction can be sustained based on the stolen firearm, we do not address defendant's second argument.

I

FACTS AND PROCEDURAL HISTORY

A. *The Underlying Theft*

Behrod G. and Peter H. were acquaintances from work. They met around 2012 and socialized two or three times outside their jobs. Behrod G. told Peter H. that he

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

2

owned firearms and explained where he kept them in his condominium. Behrod G. also invited Peter H. over to his residence in early 2013.

Around September 2013, Peter H. showed up at Behrod G.'s home in the morning, unannounced and uninvited, and began looking through his windows. When confronted by Behrod G., Peter H. claimed he was considering buying a place down the street. Behrod G. invited him inside the condominium. Once inside, he asked about a webcam that Behrod G. had set up inside his house. Behrod G. believed Peter H. was casing his home for a burglary.

In early October 2013, Behrod G. returned from a weekend trip to find his condominium had been burglarized. Among the items stolen were a Springfield Armory XD .45-caliber handgun with the serial number XD625588 (XD), a silver Apple MacBook Pro laptop, and a black range bag (used to store ammunition, magazines, holsters, cleaning utensils, and ear and eye protection), which had held the XD.[2] Behrod G. described the laptop to the investigating police officer as a 15-inch MacBook Pro.

After Behrod G. discovered that his home had been broken into, he set up an alert through Apple to locate his laptop. Soon after, he received a notification that his laptop was connected to the Wi-Fi network at the Costa Mesa Apple Store. Behrod G. reviewed video surveillance from that Apple Store and recognized Peter H. as the man holding the laptop. A police officer searched Peter H.'s residence in December 2013. None of the items described as stolen by Behrod G. were found. While Peter H. had possession of an 11-inch MacBook Air, the officer did not seize it since it was smaller than the laptop described as stolen by Behrod G. Nothing in the record shows that Peter H. was charged with any crime in connection with the theft.

---

[2] Other stolen items included a watch, a camera, and one or two other handguns that were also inside the range bag.

*B.  Search of Defendant's Car*

In February 2014, police officers were doing a compliance check for a parolee at a condominium in Orange, which was unrelated to the burglary of Behrod G.'s home.  The parolee was not at the unit, so officers visited another unit where they believed the parolee might be.  Defendant happened to be in that unit when the officers arrived.  Though defendant was not the focus of their investigation, the police asked for permission to search his vehicle.  Defendant consented, and he walked with the officers to his car.  Prior to the search, defendant told the police that there was a gun in a locked box in the passenger compartment.  The police located the gun in their search, which was a Beretta nine-millimeter that belonged to defendant.  The police then asked defendant to open his trunk, and he expressed concern about a black bag in there that he claimed belonged to Peter H.:

> "[Officer 1]:  Would you mind . . . popping your trunk open?
>
> "[Officer 2]:  Hey hold on, he wants to tell you something.  [¶]  . . .  [¶]
>
> "[Defendant]:  I don't know if he took it out or not.  That's why I . . . .
>
> "[Officer 1]:  What?  [¶]  . . .  [¶]
>
> "[Defendant]:  It's a, a black bag, a duffle bag.
>
> "[Officer 1]:  In [the trunk]?
>
> "[Defendant]:  Yeah, it's uh . . .
>
> "[Officer 1]:  Who does it belong to?
>
> "[Defendant]:  Peter."

After opening the trunk, the officers found a black range bag containing vinyl gear, a gun cleaning kit, and the XD.  They also found a silver MacBook laptop in the trunk.  The police again asked defendant about the black range bag.  And he again stated that it and its contents belonged to Peter H., but defendant also stated that he was *planning* to buy the XD from Peter H.:

> "[Officer 1]:  So this other black bag belongs to Peter?

"[Defendant]:  Yeah.

"[Officer 1]:  Peter who?

"[Defendant]:  I don't know his last name.[3]  [¶]  . . .  [¶]

"[Defendant]:  We were gonna go to drink Saturday.  Didn't work out.

"[Officer 1]:  Okay, but you got a guy named Peter . . .  [¶]  . . .  [¶]

"[Officer 1]:  Some guy named Peter leaves an [XD] . . .

"[Defendant]:  I was gonna buy it from him. . . ."

One of the officers then asked defendant that if he ran a search for the XD, "is that gun gonna come back stolen?"  To which defendant replied, "I, I hope not."

The police officers and defendant returned to the condominium and the police continued to question defendant about the XD.  Defendant then admitted that he had already purchased the gun from Peter H. for $700 around two months ago and that he did not get a receipt or bill of sale.  He also admitted to knowing that he was supposed to go to a gun store to transfer ownership after the purchase.  The officers then confronted defendant with his contradictory prior statement that the XD belonged to Peter H.:

"[Officer 1]:  So what's the truth?

"[Defendant]:  I did purchase it, but if anything comes back on [the XD], it's not me.  That's why I did that."

An officer ran record checks on both firearms.  The Beretta was registered to defendant.  The XD showed up as being registered to Behrod G. but was not listed as stolen due to a typographical error in the serial number when the XD was initially entered as stolen.  The police officers contacted Behrod G. and told him that they were in possession of a firearm registered in his name.  He informed the police that the XD had been stolen from him and also told them about the other items that had been stolen from his home, including a silver 15-inch MacBook Pro laptop.

---

[3] Defendant later clarified to the officers that "Peter" was Peter H.

The police confiscated the XD, laptop, and range bag from defendant. Behrod G. later retrieved the items and identified them as his. The laptop, however, was damaged and would not turn on, so defendant ended up discarding it after the police returned it to him. Behrod G. estimated the combined value of these items to be over $1,500. When asked about the value of each item individually, Behrod G. stated that he had purchased the handgun for $400 to $600, he estimated the range bag to be worth $100, and stated that he had purchased the laptop used in 2012 for roughly $900 to $1,000.

On April 10, 2014, the People filed a complaint, charging defendant with one count of receiving stolen property in violation of section 496, subdivision (a). That case was apparently dismissed for lack of witnesses on June 20, 2018, and a complaint was refiled on June 21, 2018. An information was filed on March 25, 2019, alleging defendant had committed one count of a felony violation of section 496, subdivision (a), based on his possession of the XD, the laptop, and the gun range bag. The information further alleged the combined value of these items was over $950.

C. *Defendant's Case at Trial*

At trial, defendant argued that the laptop taken from his trunk was not the same one that Behrod G. reported stolen. Among other things, he argued that the laptop recovered from his trunk was an 11-inch MacBook Air, while the laptop reported stolen was a 15-inch MacBook Pro laptop. While the police report stated a silver 15-inch MacBook Pro laptop had been recovered from defendant's trunk, the property receipt listed the recovered laptop as a MacBook Air, not a MacBook Pro. Also, photographs that purportedly depicted the recovered laptop showed an 11-inch mid-2012 MacBook Air, not a 15-inch MacBook Pro. This also created a discrepancy with Behrod G.'s testimony that he had purchased the laptop in 2011. Behrod G. also gave conflicting testimony at trial, claiming that the laptop stolen from his home was an 11-inch MacBook

6

Air but also recognizing that he had also previously testified in 2016 that a 15-inch MacBook Pro was stolen from his home.

As to the XD, defendant testified he had met Peter H. through a mutual friend, Josh H., in September 2013. He next saw Peter H. about a month later when Josh H. coordinated a firearm sale between defendant and Peter H. The three men met at a storage facility in Costa Mesa, where Peter H. sold defendant the XD for $700. Defendant paid the total in two installments. The first installment was made at the storage facility, and the second one was made two days later. Defendant claimed to have purchased the black bag found in his trunk from Peter H. when he made the second installment payment.

Defendant further testified that a few days after he purchased the XD from Peter H., he also purchased an AR-15 rifle from his neighbor. The two men went to a gun store to register the AR-15 in defendant's name, and defendant also brought along the XD for registration. But the gun store worker refused to register the XD and told defendant that he needed the seller of the firearm to be present. This was the first time defendant learned that for private firearm sales, the actual seller needs to be present at the gun store to register a firearm. Defendant claimed to have made several subsequent attempts to contact Peter H. to accompany him to a gun store to register the XD, but they were unable to do so because of conflicting schedules. Defendant asserted that he did not know the XD was stolen until the police told him so after searching his trunk.

Neither Peter H. nor Josh H. testified during trial. During closing statements, defense counsel stated that Peter H. could not be located. Defendant also testified that Josh H. had been involved in a serious motorcycle accident that affected his memory and no longer remembers the relevant events.

7

*D.  Jury Deliberation and Verdict*

Prior to deliberation, the jury was given an instruction on unanimity, stating that "[t]he people have presented evidence of more than one act to prove that the defendant committed [the offense of receipt of stolen property].  You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."  During jury deliberations, the jury submitted a question to the trial court:  "[i]s it true that if any one of the items is considered not stolen that the defendant is not guilty?"  The trial court referred them back to the unanimity jury instruction.  Following deliberation, the jury found defendant guilty.  But it also found untrue the allegation that the value of the property received was more than $950, thus reducing the offense to a misdemeanor.  Defendant was sentenced to three years of probation.

Defendant makes two arguments on appeal.  First, there was insufficient evidence to establish that defendant knew the XD was stolen.  Second, there was insufficient evidence at trial that the laptop and bag found in his trunk were the ones stolen from Behrod G.  We disagree with defendant's first contention, which obviates the need to address the second argument.

II

DISCUSSION

*A.  Standard of Review*

We must affirm defendant's conviction if it is supported by substantial evidence.  (*People v. Grant* (2003) 113 Cal.App.4th 579, 595-596.)  "'Our role in considering an insufficiency of the evidence claim is quite limited.  We do not reassess the credibility of witnesses . . . , and we review the record in the light most favorable to the judgment, . . . drawing all inferences from the evidence which supports the [fact finder's] verdict . . . .  By this process we endeavor to determine whether "'*any* rational

8

trier of fact'" could have been persuaded of the defendant's guilt.'" (*People v. Manriquez* (1999) 72 Cal.App.4th 1486, 1490 (*Manriquez*).) "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331-332.)

Further, in conducting our review, "[w]e must accept logical inferences that the jury *might have drawn* from the evidence although we would have concluded otherwise. [Citations.] 'If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.'" (*People v. Vasquez* (2015) 239 Cal.App.4th 1512, 1516–1517, italics added (*Vasquez*).) Due to its limited focus, "[t]he substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

*B. Sufficiency of the Evidence*

"[T]he elements of receiving stolen property are: (1) that the particular property was stolen; (2) that the accused received, concealed or withheld it from the owner thereof; and (3) that the accused knew that the property was stolen." (*People v. Johnson* (1980) 104 Cal.App.3d 598, 605.) Based on defendant's conviction of misdemeanor receipt of stolen property and the jury's question during deliberation, it appears the jury did not find all three elements had been met for the three items listed in the information. Defendant agrees, concluding "it is likely that the jury focused on the

9

handgun, which matched the one reported stolen." Thus, we begin our review with the XD, for which defendant only contests the existence of the third element – knowledge.

"Knowledge that property was stolen seldom can be proved by direct evidence, and resort often must be made to circumstantial evidence. [Citations.] '[P]ossession of stolen property, accompanied by no explanation or unsatisfactory explanation, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. *Corroboration need only be slight and may be furnished by conduct of the defendant tending to show his guilt.*'" (*In re Richard T.* (1978) 79 Cal.App.3d 382, 388, italics added.) "False or evasive answers to material questions with reference to the ownership of stolen property tend to prove such knowledge." (*People v. Reynolds* (1957) 149 Cal.App.2d 290, 294-295.) Indeed, "'[a] defendant's ". . . admissions and contradictory statements coupled with his possession of the stolen property alone are sufficient to support a finding of guilt."'" (*In re Richard T.* (1978) 79 Cal.App.3d 382, 388-389.)

For example, in *People v. Grant*, *supra*, 113 Cal.App.4th at pages 584-585, police found computer equipment in the defendant's garage in 2001 that had been stolen from a high school in 1998. When questioned about the equipment, the defendant stated he had purchased it in 1995 for $100. Because there was evidence the defendant had lied about purchasing the equipment, there was a reasonable inference that he knew the equipment was stolen. (*Id*. at p. 596.) Similarly, here, there is sufficient evidence to support the verdict. As explained below, defendant's lies that the XD belonged to Peter H. constitute substantial evidence of his knowledge that the XD was stolen.

To begin, defendant made contradictory statements to the police when they searched his vehicle in February 2014. There was evidence that defendant hesitated when one of the officers asked him if there was anything illegal in the car. Defendant then said to the officers, "I don't know if he took [the black bag] out [of the trunk] or not." When officers initially asked him to identify the owner of the black bag, defendant

10

said it belonged to Peter H. And when the police found the XD in the bag, defendant again claimed it belonged to Peter H. and that he "was gonna buy it from [Peter H.]" But upon further questioning, defendant provided a different story. He admitted to buying the gun from Peter H. two months prior for $700.

Moreover, when confronted with his contradictory stories, defendant admitted that he had purchased the gun, "but if anything comes back on [the XD], it's not me. That's why I did that." Defendant admittedly chose to lie about the ownership of the XD to insulate himself from any unlawful act associated with it. From this admission and defendant's contradictory stories, the jury could logically infer that defendant knew the XD had been stolen. And we must accept this inference on appeal. (*Vasquez*, *supra*, 239 Cal.App.4th at pp. 1516-1517.)

In response, defendant points to his trial testimony that he was concerned about the police finding the XD because he had not yet transferred the registration from Peter H. to himself, not because he believed the XD was stolen. But the jury apparently found this explanation to be untrue, and, on appeal, we will not question their credibility findings. (*Manriquez*, *supra*, 72 Cal.App.4th at pp. 1490-1491.) Also, this testimony does not explain why defendant expressed concern that a records check might reveal something unlawful about the XD. Such concern would be unnecessary if defendant believed he had lawfully purchased the firearm from Peter H.

Next, the jury could reasonably find that defendant's failure to register the XD constituted a suspicious circumstance. He knew he needed to register it in his name. And he also knew that to do so, he had to visit a gun store with the lawful owner of the XD. The jury could reasonably infer that defendant did not attempt to register the XD with Peter H. during the four months that he possessed it because he knew the gun was stolen. While defendant testified that scheduling conflicts prevented him from going to the gun store with Peter H. to register the XD, based on the verdict, it appears the jury did not find this testimony credible. And we will not review this finding on appeal.

11

(*Manriquez*, *supra*, 72 Cal.App.4th at pp. 1490-1491; *Vasquez*, *supra*, 239 Cal.App.4th at pp. 1516-1517.) Likewise, the jury could reasonably infer defendant knew the gun had been stolen because neither defendant nor Peter H. prepared a receipt or memorialized the transaction in writing.

As to this evidence, defendant asserts that it is "inconceivable that [he] would take the gun into a legitimate shop to register it in his name shortly after buying it if he knew it to be stolen[.]" But defendant did not learn that the actual seller of the gun needed to be present to transfer registration until he asked the gun shop to register the XD in his name. So, the jury could reasonably infer that once defendant learned the actual seller needed to be present, he stopped attempting to register the XD because he knew Peter H. was not its actual owner. We accept this latter inference on appeal. (*Vasquez*, *supra*, 239 Cal.App.4th at pp. 1516-1517; *Manriquez*, *supra*, 72 Cal.App.4th at pp. 1490-1491.)

Defendant also compares this case to *People v. Kunkin* (1973) 9 Cal.3d 245 (*Kunkin*), which we find unpersuasive. In *Kunkin*, a newspaper was indicted for receiving stolen property after it obtained a confidential list of undercover narcotics officers from a former employee of the California Attorney General's office. (*Id*. at pp. 247-248.) The former employee testified that he had only given the newspaper the roster temporarily for review and that he never intended to relinquish the document. (*Id*. at p. 254.) But the Attorney General argued the newspaper knew the roster had been stolen due to "[t]he sensitive nature of the information, [the employee's] appearance and desire to remain anonymous, defendants' awareness that the publication might cause trouble, defendants' willingness to pay a small sum for the roster and refusal to surrender the same . . . ." (*Id*. at pp. 254-255.)

The Supreme Court found the former employee's testimony was not contradicted by the circumstantial evidence produced by the Attorney General: "[t]he Attorney General's list of suspicious circumstances confuses circumstances which might

12

well serve to put a publisher on notice that official displeasure would result from publication of information released to him without authorization, with circumstances which should signal that the property tendered has been taken by theft by larceny." (*Kunkin*, *supra*, 9 Cal.3d at p. 255.) Further, the newspaper's offer to pay was insignificant since they offered "similar amounts for information whether lawfully or unlawfully come by." (*Ibid*.) Given that the former employee's testimony was uncontroverted, the Supreme Court found there was insufficient "evidence to support the jury's finding that [the newspaper] knew the roster was stolen." (*Id*. at pp. 255-256.)

Defendant contends that like the former employee in *Kunkin*, his testimony was uncontradicted and so the jury wrongly determined he knew the XD was stolen. We are not persuaded. Defendant's testimony was contradicted by the circumstantial evidence set forth above. Among other things, unlike *Kunkin*, defendant intentionally tried to mislead police officers into believing that the XD was not his and belonged to Peter H. He admittedly did so to distance himself from the XD in case anything unlawful came back on the gun after a records search. This circumstantial evidence, along with defendant's failure to register the XD, is sufficient to affirm the jury's verdict.

Defendant also relies on *People v. Dupre* (1968) 262 Cal.App.2d 56, 57, in which the appellate court reversed the defendant's conviction of receiving two stolen television sets. But as defendant explicitly acknowledges in his brief, *Dupre* was not a case where the defendant "'[gave] a false explanation regarding [her] possession or remain[ed] silent under circumstances indicating a consciousness of guilt.'" (*Id*. at p. 59.) That is not true here. Defendant gave contradictory statements to the police regarding the ownership of the black bag and the XD.

Finally, defendant makes much of the fact that he and Behrod G. did not know each other at the time of the robbery and were separated by two layers of people (Peter H. and Josh H.). Similarly, he contends that he barely knew Peter H. when he bought the XD. But it is unnecessary for defendant to be told directly that the property is

13

stolen.  Nor is it required that the defendant have any connection to the theft victim or a relationship to the alleged thief outside of buyer and seller.  "'Knowledge may be circumstantial and deductive.'"  (See *People v. Lodge* (1961) 190 Cal.App.2d 865, 872.)  Despite defendant's lack of relationships with the Behrod G. or Peter H., there is enough evidence in the record for the jury to reasonably infer that defendant knew the XD was stolen.

Given this conclusion, we need not address defendant's argument that there is insufficient evidence that the laptop and bag found in his car were the ones stolen from Behrod G.  The result will not change even if defendant is correct.  "'Where the jury considers both a factually sufficient and a factually insufficient ground for conviction, and it cannot be determined on which ground the jury relied, we affirm the conviction unless there is an affirmative indication that the jury relied on the invalid ground.'"  (*People v. Thompson* (2010) 49 Cal.4th 79, 119; *People v. Giron-Chamul* (2016) 245 Cal.App.4th 932, 957 ["'[W]hen a prosecutor argues two theories to the jury, one of which is factually sufficient and one of which is not, . . . the reviewing court must assume that the jury based its conviction on the theory supported by the evidence'"].)

For example, in *People v. Giron-Chamul*, *supra*, 245 Cal.App.4th 932, the prosecution identified two different sex acts under which the defendant could be convicted of oral copulation with a child aged 10 years or younger.  The jury was given an unanimity instruction as to the two acts and ultimately found the defendant guilty.  The appellate court ruled there was sufficient evidence supporting the occurrence of one of the acts.  As such, it did not need to examine the sufficiency of the evidence as to the other act.  (*Id.* at pp. 956-957.)  Likewise, here, defendant's misdemeanor conviction of receipt of stolen property can be affirmed based solely on the XD.  Nothing in the record indicates the jury based its verdict on either the laptop or the bag.  Thus, we need not determine whether there is sufficient evidence to support a conviction based on those items.

14

### III

### DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.