Filed 6/11/26  P. v. Johnson CA1/4
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DEVIN LAMAR JOHNSON,<br><br>     Defendant and Appellant. | A171513<br><br>(Marin County Super. Ct.<br>No. SC222227A;<br>Mendocino County Super. Ct.<br>No. 21CR02012) |

Devin Lamar Johnson started a brush fire that ultimately burned 257 acres and 30 dwellings.  About a month later, a psychologist diagnosed him with early stage schizophrenia.

A jury acquitted Johnson of aggravated arson (Penal Code, § 451.5, subd. (a)(3) [1])—a count for which the trial court allowed mental-illness evidence to negate the required state of mind.  The jury convicted him of arson of a dwelling (Penal Code, § 451, subd. (b))—a count for which the trial court did not allow such evidence.  The jury found true that Johnson had caused multiple structures to burn within the meaning of section 451.1, subdivision (a)(4).  The trial court found true prior strike and aggravation allegations.

---

[1] All further statutory references are to the Penal Code.

The trial court sentenced Johnson to the midterm of 5 years, doubled under the "Three Strikes" law (section 1170.12), plus a consecutive 5 years for the multiple-structures enhancement, for a total of 15 years.

On appeal, Johnson challenges the arson conviction on two related grounds. He argues that the trial court erred by instructing the jury to disregard evidence of his mental illness when deciding whether he acted with the required intent. He also argues that insufficient evidence supports the jury's finding that he acted with the required intent. Underpinning these arguments is Johnson's contention that we should classify arson as a specific intent crime in the context of a mental illness defense, which he acknowledges would require us to conclude that we are not bound on that point by Supreme Court cases holding that arson is a general intent crime. We cannot so conclude, and therefore affirm.

## DISCUSSION

We first address Johnson's specific intent contention. Then we turn to his dependent claims of instructional error and insufficiency of the evidence.

## I.

Courts categorize some crimes as requiring proof of general intent and others as requiring proof of specific intent. (See, e.g., *People v. Atkins* (2001) 25 Cal.4th 76, 81–83.) These terms have been explained as follows. "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent." (*People v. Hood* (1969) 1 Cal.3d 444, 456–457.) On the other hand, "[w]hen the definition refers to [a] defendant's intent to do some further act or achieve some

additional consequence, the crime is deemed to be one of specific intent." (*Id.* at p. 457.)

The distinction matters when, as in this case, a defendant wants to present evidence that their mental illness precluded them from forming the necessary mental state to commit a particular crime. Section 28, subdivision (a), allows a defendant to offer evidence of a mental illness assertedly precluding formation of a mental state only if they are charged with a specific intent crime. When the crime charged is one of general intent, the defendant may not present evidence to "negate the capacity to form [a] mental state." (*Ibid*; see also *People v. Gutierrez* (1986) 180 Cal.App.3d 1076, 1082 ["evidence of mental illness may be offered to show the absence of specific intent but not to prove the absence of general intent"].)

We need not analyze how to classify arson. The California Supreme Court has answered that question. In *People v. Atkins, supra*, 25 Cal.4th 76, a case involving voluntary intoxication rather than mental illness, the court held that arson requires only a general criminal intent. (*Id.* at p. 84.) The court explained that a defendant need intend only "to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning the relevant structure or property." (*Id.* at p. 89.) The court rejected the argument—raised anew by Johnson in this case—that the word "maliciously" in the arson statute requires something more. (*Id.* at pp. 85–86; see § 451.) Under *Atkins*, arson does not require "a specific intent to set fire to or burn or cause to be burned the relevant structure or forest land . . . ." *(Id.* at p. 84.)

Johnson argues that *Atkins* did not address whether mental health evidence was admissible in an arson prosecution and that the decision "was based, in part, on legislative policy regarding intoxicated offenders, which are

3

distinct from the policy considerations regarding mentally ill offenders." But Johnson identifies no authority suggesting that the categorization of a crime as general or specific intent varies with the cause of the defendant's diminished capacity. Under section 28, the inadmissibility of mental health evidence to negate the required state of mind flows directly from *Atkins*'s holding that arson is a general intent crime—a categorization that the Supreme Court reiterated in *In re V.V.* (2011) 51 Cal.4th 1020, 1027, which did not involve a voluntary intoxication defense. We have no authority to carve out an exception. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## II.

The trial court did not err by instructing the jury not to consider evidence of Johnson's mental illness when determining whether he had the required mental state for arson. As noted, such evidence is not allowed as a defense to a general intent crime. (§ 28; *People v. Gutierrez, supra*, 180 Cal.App.3d at p. 1082.) Johnson does not dispute that the instruction was proper *if* arson is indeed such a crime, without any exception for a mental illness defense.

## III.

Johnson's claim that insufficient evidence supports his conviction fails for the same reason. His specific argument is that "the evidence is insufficient to support the element of malice" because the jury was not allowed to consider "his grave and complex mental health disorder of undiagnosed and untreated schizophrenia." As discussed, the trial court properly instructed the jury to disregard such evidence.

Though Johnson makes no further argument regarding the sufficiency of the evidence, we briefly address the evidence that supports the jury's

4

implicit finding that Johnson acted "maliciously" under section 451. "In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Vasquez* (2015) 239 Cal.App.4th 1512, 1516.)

Malice requires only "the deliberate and intentional ignition or act of setting a fire without a legal justification, excuse or claim of right." (*In re V.V., supra*, 51 Cal.4th at p. 1028.) The perpetrator need not be subjectively aware that a destructive fire will be the probable consequence of their act. (*Id.* at p. 1030.) They need only be aware "of facts that would lead a reasonable person to realize that the direct, natural, and highly probable consequence" of setting the fire would be destructive burning. *(Ibid.)*

Sufficient evidence supports a finding that Johnson deliberately and intentionally set the brush fire.

At trial, Johnson testified that he had started the fire accidentally by dropping a lit cigarette that he had been smoking into dry grass. He said that he went to look for it but that it was buried in the grass. He said it started singeing the dead grass, and that when he tried to stomp it out it began to flame. Video showed, and Johnson conceded, that he was at the origin site for five minutes. During part of that time, he testified, he was smoking the cigarette.

The jury heard testimony that contradicted Johnson's story. A fire chief and investigator who investigated the fire testified as follows. A cigarette needs a minimum of 8 minutes to smolder before it will go to flame. The average time is 12 minutes. To remain lit, a cigarette would need to land with the tip down, facing the wind, "so that the wind keeps it going because

5

no one is puffing on it . . . ." The investigation team did not find any cigarette butts at the site. Based on this and other evidence, the investigation team concluded that "it just didn't add up that [accidental ignition by a dropped cigarette] could even be a possibility . . . ."

Evidence supported a different theory—that Johnson had deliberately started the fire with a cigarette lighter that was later found in his apartment. The investigation team concluded that an open flame had started the fire. In a way relevant to intent, the investigator testified that it takes a concerted effort to make a lighter work: "[y]ou have to take it out of your pocket or whatever it is in. You have to manipulate your lighter with your thumb to get it to work. And you have to hold that against something that would be combustible." It takes some time, he further testified, for the enough heat to transfer from a lighter flame to other material before it will catch on fire.

Sufficient evidence also supports a finding that Johnson was aware of facts that would lead a reasonable person to understand that the highly probable consequence of setting the fire was that it would spread to inhabited buildings. The origin site was about an eighth of a mile from Johnson's home in the town where the buildings burned. At the origin site, Johnson noticed that the nearby creek was dry. He testified that the grass was dry and that there was a layer of dead grass around the area. Another witness testified about typical September conditions in the area. He said that it was a hot, dry time of the year. A wind usually picked up at about 2 p.m., as it did on the day of the fire. In addition, the area had been in drought for a number of years. Johnson testified that he had lived in the area a while before the fire and that it was his hometown. The jury reasonably could infer that he was aware of these conditions and the proximity of the site to buildings in the town.

6

## DISPOSITION

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
SWEET, J.*

---

*Judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7